## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOHN PAUL THOMAS,

      **Plaintiff,**

v.                                                                      No. CV 08-0427 MV/LAM

CHRIS BARELA,
CHARLES GUFFEY,
KEVIN ANDERSON,

      **Defendants.**

## ORDER DISMISSING COMPLAINT

**THIS MATTER** comes *sua sponte* before the Court on its duty under 28 U.S.C. § 1915A(a) to screen cases that prisoners have filed against governmental entities or their employees "as soon as practicable" to determine if the claims should be dismissed because the action "is frivolous or malicious or fails to state a claim on which relief may be granted; or [] seeks monetary relief against a defendant who is immune from such relief." § 1915A(b)(1)-(2). The Court also must screen Plaintiff John Paul Thomas's allegations to determine their facial validity in stating a claim in light of his pauper status. *See* 28 U.S.C. § 1915(e)(2).

In screening the complaint, the Court resolves the issue whether the complaint states a claim on which relief may be granted by applying the same standards used in resolving motions to dismiss for failure to state a claim brought under FED. R. CIV. P. 12(b)(6). *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). This means that the Court must

> look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. Rather than adjudging whether a claim is 'improbable,' factual allegations in a complaint must be enough to raise a right to relief above the speculative level. In addition, [the Court] must construe a pro se [] complaint liberally.

*Id.* at 1218 (internal quotation marks, original brackets, and citations omitted). But "[t]he broad

reading of the [pro se] plaintiff's complaint does not relieve the plaintiff of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

> [T]he [pro se] plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint.  Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.  This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.

*Id.*  (citations omitted). In screening the Complaint, the Court will accept as true Thomas's allegations and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to Thomas.  *See Kay*, 500 F.3d. at 1217.  The Tenth Circuit has held that "a court should allow a [pro se] plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim."  *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001).

Thomas filed this action under 42 U.S.C. § 1983 against three individuals employed by, or who contracted with, the Dona Ana County Detention Center ("the DACDC") in Las Cruces, New Mexico, alleging that they violated his Eighth-Amendment right to be free from cruel and unusual punishment and that his constitutional right to access to the courts has been violated.  During most of the time period during which Thomas was held at the DACDC, he was a pre-trial detainee.  By June 1, 2008, however, Thomas had been convicted and sentenced, and was transferred to a state prison facility.  *See* Doc. 7 (Thomas's notice of change of address); Doc. 22 (Amended Complaint).

Thomas The Court recently denied Thomas's motion for injunctive relief because he sought relief

2

against non-parties and because he had not established a right to injunctive relief.  *See* Doc. 38.

## I.  THOMAS'S CLAIMS FOR VIOLATION OF THE EIGHTH AMENDMENT.

### A.  ALLEGATIONS IN THE COMPLAINT

The following allegations are taken from Thomas's Amended Complaint, filed October 27, 2008 (Doc. 22)[1].  Thomas was arrested on October 9, 2007, and detained at the DACDC.  Defendant Chris Barela is the administrative director of the DACDC.   Medical staff there immediately performed a brief exam, at which time Thomas told them he had "a weak heart with constant flutters and occasional miss beatings."  Doc. 22 at 3.  Thomas states that he did not see a doctor and was not prescribed any medication.  *Id.*  Thomas does not allege that he reported to the medical staff that he was having serious heart issues at that time, that he previously had been diagnosed with a heart condition, or that he took any medication of any type.

When he was arrested, Thomas states that he reported to the medical staff that he had "clear and obvious psychiatric conditions that are documented with the California Department of Corrections and Social Security Department."  *Id.* at 4.  He states that, at some unspecified point, he "became known . . . as having erratic behavior and needing medication."  *Id.*  He states that he was placed on an "informal suicide watch" at the DACDC on January 7, 2008.  *Id.*  On January 14, 2008, Thomas saw an unnamed psychiatrist and explained his psychiatric "history" to him, including "what has and has not worked for him."  *Id.* at 3.

At that time, Thomas requested a prescription for Seroquel, which he contends gave him "the most success with the lest [sic] amount of side effects."  *Id.*  The psychiatrist told him that Seroquel

---

[1]  Under FED. R. CIV. P. 15(a)(1)(A), a plaintiff may amend his complaint once as a matter of course if no answer has been filed.

was "the most expensive medication" and that Defendants  Charles Guffey and Kevin Anderson
(who are both employees of Prison Health Services, an independent contractor that provides medical
services at the Center, *see* Doc. 28 at 1-2) "do not like to approve [it] unless necessary."  Doc. 22
at 3.  Thomas states that he argued with the psychiatrist and lost, and that the psychiatrist prescribed
Elavil to him.  *See id.*  There are no allegations that the psychiatrist ever asked Guffey or Anderson
to approve a prescription for Seroquel for Thomas.

Thomas states that, five days after starting the Elavil, he felt "loaded," experienced
"shortness of breath," "felt a strain on his heart," and that his heart then went into "a massive flutter
and [froze] in mid-beat" for about ten seconds before it started beating regularly again.  *Id.*  Thomas
reported the incident to the medical staff, but "nothing happened."  *Id.*  Thomas subsequently
refused to take the Elavil during the daily "pill line" and signed a refusal form stating he would not
take the medication about thirty days later.  *See id.*  Thomas states that he made at least five requests
to see a psychiatrist during this time, and finally saw a different psychiatrist on March 18, 2008.  *See
id.* at 3-4.  This psychiatrist did a "new and complete review of plaintiff and his file" and prescribed
Seroquel, telling Thomas, apparently for the first time, that he should "have never been on Elavil
because of his heart."  *Id.* at 4.  Two nurses subsequently told Thomas the same thing.  *See id.*

Thomas complains that, until June 2008, the DACDC's "medical staff were in the practice
of 'crushing' psychiatric medication and mixing it in water . . . which alters the medication and/or
destroys coatings, time releases, etc., and overall changes the effect of the medication."  *Id.* at 5.
He states that he complained about "the alter [sic] affects and the danger of this."  *Id.*

Thomas characterizes Count I (regarding the side-effect of Elavil), Count II (regarding
delayed psychiatric care), and Count III (for crushing his psychiatric medication) as claims for

"freedom from cruel and unusual punishment; medical malpractice and negligence." *See id.* at 3, 4. Thomas contends that, as his "legal custodian," Barela was responsible for his safety and care, and that Anderson and his supervisor, Guffey, were responsible in their supervisory capacities as medical directors for ensuring that the DACDC provided "adequate care." *Id.* at 4. He opines that Barela, Guffey, and Anderson "knowing and willingly violated [his] civil rights with deliberate indifference or lack of knowledge of clear and obvious is so gross has their position of employment warrents legal responsibility." *Id.* at 3. Thomas did not name the psychiatrist or any other care-givers at the DACDC as Defendants.

## B.  APPLICABLE LAW

It has long been established that medical negligence does not provide a basis for liability under § 1983[2] for violating the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* Applying the "deliberate-indifference" subjective component means that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

---

[2]  Although some of Thomas's claims are based on incidents occurring while he was a pre-trial detainee and some are based on his status as a convicted prisoner, the analysis is the same. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) ("Although pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983.") (internal quotation marks, bracket, and ellipsis omitted).

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see  Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (holding that, because "inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition do not constitute a medical wrong under the Eighth Amendment," "a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment").  The Tenth Circuit has held that deliberate indifference also may be "shown when prison officials have prevented an inmate from receiving recommended treatment" about which the officials know.  *Ramos*, 639 F.2d at 575.

Further, there is an objective component in Eighth Amendment analysis that the allegations in the complaint also must satisfy – showing that the deprivation was "sufficiently serious" that it posed "a substantial risk of serious harm" to the inmate.  *Farmer,* 511 U.S. at 834 (internal quotation marks omitted).  "[I]n evaluating whether a deliberate indifference claim has been established, we first look to whether the harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause."  *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* at 751 (quotation marks omitted).  Thus, "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.  The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain."  *Id.* (internal quotation marks and citation omitted).  In *Mata*, the Tenth Circuit gave the following example of how a district court should apply the deliberately-

6

indifferent subjective and sufficiently-serious objective components:

> For example, when delay by prison employees results in damage to a prisoner's heart, the question raised by the objective prong of the deliberate indifference test is whether the alleged harm (such as heart damage) is sufficiently serious (which it undoubtedly is), rather than whether the symptoms displayed to the prison employee are sufficiently serious . . . .   In this context, the symptoms displayed are relevant only to the subjective component of the test:  were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?

*Id.* at 753.

Of course, liability under § 1983 cannot rest solely upon an individual's status as a supervisor.  Instead, to properly allege supervisory liability, the inmate must identify an "affirmative link" between the alleged constitutional deprivation and either the supervisor's "personal participation [in that deprivation], his exercise of control or direction, or his failure to supervise." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003) (internal quotation marks omitted); *Pierce v. Amaranto*, No. 07-7094, 276 Fed. Appx. 788, 791 (10th Cir. May 1, 2008) (unpublished) (affirming summary judgment in favor of sheriff because bare allegation that sheriff had failed to supervise jailers was insufficient to establish supervisory liability because, "even if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate that risk") (internal quotation marks omitted).  This affirmative link must be alleged in the complaint.  *See Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156-57 (10th Cir. 2001).

### C.  ANALYSIS

**1.  Thomas does not state a constitutional violation for medical negligence**.

Count I alleges negligence in failing to properly treat Thomas for his psychiatric condition by prescribing Elavil.  Assuming that the psychiatrist at DACDC was negligent in prescribing Elavil,

Thomas has failed to allege facts showing either that he suffered a substantial injury or that the psychiatrist was anything other than negligent in prescribing that medication.  Thomas states that he took the Elavil for only 5 days, and that he experienced only some mild discomfort (feeling "loaded," experiencing "shortness of breath," and feeling "a strain on his heart,") before he felt his heart stop beating for a period of about ten seconds.  *See* Doc. 22 at 3.  He does not allege that he suffered substantial pain or any permanent injury from the short period of time he took Elavil.  As a matter of law, the temporary and mild "harm" Thomas allegedly suffered by taking Elavil for five days was not sufficiently serious to support a claim for cruel and unusual punishment.  *See Mata*, 427 F.3d at 752-53.

Further, Thomas states no facts indicating that he has ever been diagnosed with a serious heart condition.  He states that he reported to medical staff at the DACDC only his opinion that he has a "weak heart" and his subjective complaints of intermittent heart "fluttering."  There are no allegations that he reported previous heart attacks, taking heart medication, or having prior treatment for heart issues or that the medical staff found any objective evidence of heart issues during their preliminary medical examination.  He does not allege in the amended complaint that he warned the psychiatrist that he could not take Elavil or that he had been diagnosed with a serious heart condition.  Thus, nothing in Thomas's complaint supports a claim that the DACDC staff were being deliberately indifferent to a known, serious medical condition by not having a specialist immediately examine Thomas for heart problems or by prescribing Elavil for his mental issues.  *See id.*

Further, there are no allegations that Thomas or the medical staff ever alerted Defendants Barela, Guffey, or Anderson that there were any issues regarding Thomas's medical care, and no allegations that the psychiatrist requested approval for prescribing Seroquel instead of Elavil but that

the Defendants denied that request.  There are no allegations that any of the Defendants were personally involved in Thomas's care.  Thus, even if medical staff had been deliberately indifferent to serious medical needs, these Defendants cannot be held liable solely on the theory of supervisory liability.  *See Ledbetter*, 318 F.3d at 1187.

   **2.  The complaint does not allege facts to support deliberate indifference in the delay of treatment for Thomas's psychiatric condition.**

   In Count II, Thomas appears to claim violation of § 1983 for the delay of his psychiatric treatment.  He states that he reported to the medical staff in October 2007 that he had "clear and obvious psychiatric conditions," but he does not allege that he informed staff that he was taking or should be taking medication for those conditions.  Thomas complains that he did not see a psychiatrist until January 14, 2008, after he had been placed in segregation on "informal suicide watch" on January 7 because he displayed "erratic behavior." Doc. 22 at 4.  But the Amended Complaint states that Thomas shared his psychiatric "history" and his previous use of Seroquel on January 14, 2008, at his first psychiatric visit.  He does not allege any previous psychotic episodes that alerted staff to serious psychiatric needs.  He does not allege that he suffered further serious psychotic episodes between the middle of January, after he discontinued using Elavil, and the middle of March, when he saw another psychiatrist and started on Seroquel.  In short, Thomas has not alleged facts to show that the approximately two and one-half month delay in receiving initial psychiatric care and the approximately two-month lapse between his first and second psychiatric appointments resulted in "substantial harm" similar to a "lifelong handicap, permanent loss, or considerable pain," and his amended complaint, therefore, does not state a claim for violation of the prohibition against cruel and unusual punishment based on a delay in psychiatric treatment.  *See*

9

*Mata*, 427 F.3d at 751.  In addition, the amended complaint alleges facts demonstrating that, when the DACDC staff recognized the necessity for a psychiatrist's attention in January, 2008 by observing his erratic behavior, they scheduled Thomas to see a psychiatrist, thereby negating any inference that they were deliberately indifferent to Thomas's serious psychiatric needs.

**3.  The complaint does not allege facts to support a violation of the Eighth Amendment by crushing medication before administering it.**

In Count III of the amended complaint, Thomas attempts to base violation of his constitutional rights on the DACDC staff's former practice of crushing psychiatric medication and mixing it with water before administering it to him.  The factual allegations again support, at the most, only a claim for medical negligence and for liability based solely on the three Defendants' supervisory capacities.  The count must, therefore, be dismissed for failure to state a claim for violation of the constitutional prohibition against cruel and unusual punishment.

In short, Thomas's allegations regarding delayed or negligent medical or psychiatric treatment do not state a constitutional violation against these Defendants and must be dismissed. And because the incidents would not support claims under § 1983 against any other staff at the DACDC such that amendment would be futile, the Court will not permit Thomas to again amend the Amended Complaint.

## II.  THOMAS'S CLAIM FOR VIOLATION OF HIS RIGHT TO ACCESS TO COURTS.

### A.  ALLEGATIONS IN THE COMPLAINT

The Amended Complaint alleges that, at the DACDC, "there was no law library, access to a law library, or adequate assistance by persons trained in the law provided."  Doc. 22 at 6.  Thomas states that he told unnamed staff members that he was a California resident and had "other legal

issues to litigate other than his New Mexico criminal proceedings." *Id.* He states that the staff ignored him and that, as a result, he was unable to "challenge extradition," or "present a defense to his California parole revocation resulting in the maximum time allotted," and that being ignored "directly caused dismissal" of a civil-rights suit for excessive use of force that he had earlier filed in California against California correctional officers. *See id.* He contends that Barela was responsible, as the DACDC's administrator, for protecting Thomas's basic civil right to access the courts. *See id.*

## B.  ANALYSIS

Although he contends that being denied the use of a law library caused the dismissal of his civil-rights suit he previously had filed in California, those bare allegations do not state a claim for denial of his due-process right to access to courts. As noted in the Court's Order denying injunctive relief, the Supreme Court has made clear that "the Constitution does not require that prisoners . . . be able to conduct generalized research, but only that they be able to present their grievances to the courts-a more limited capability that can be produced by a much more limited degree of legal assistance." *Lewis v. Casey*, 518 U.S. 343, 360 & n.7 (1996) (specifically rejecting the idea "that lack of access to adequate library facilities qualifies as relevant injury in fact"). The Court held that prisoners are only constitutionally conferred with the "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts," which is the "capability of filing suit." *Id.* at 356. A prisoner does not have "an abstract, freestanding right to a law library or legal assistance" and therefore "cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* at 351. Further, a cognizable injury only occurs when prisoners are prevented from attacking their sentences

or challenging the conditions of their confinement.  *See id.* at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (italics in original).

Before he was arrested, Thomas had already filed suit against the California prison officers for prison conditions he allegedly suffered there.  Thus, the absence of a law library or access to a person trained in the law at the DACDC did not affect his capability to file suit, and, therefore, did not violate his constitutional right to access the California courts.  *See id.* at 354 (specifically disclaiming any suggestion "that the State must enable the prisoner to . . . litigate effectively once in court").  Thomas has not stated a claim for violation of his due-process right to access to courts.

Further, simply alleging, in a conclusory fashion, that an absence of legal resources caused the dismissal of a civil case is not sufficient to state a cognizable due-process claim for denying access to the courts.

> In his complaint, Walker asserted without further explanation that he "is alleging actual injury," and that Wilkerson's refusal [to supply to him a copy of an unpublished decision not available in the prison's law library] "imped[ed] on [his] rights to attack his sentence on [state court] appeal."  In his appellate brief in this court, he adds that the unpublished decision he requested from Wilkerson "could be the one case that persuades the Oklahoma Court of Criminal Appeals to reverse and remand my guilty pleas."
>
> We agree with the district court that these conclusory and speculative allegations are not sufficient to state the required element of prejudice.  *See* Fed.R.Civ.P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quotations omitted)).  Walker has not alleged that he was unable to file his appeal from his plea and sentence without the requested document, nor has he claimed that he filed such an appeal but lost some argument because of his lack of access to that document.  *See Lewis*, 518 U.S. at 351-53.  Although pro se complaints are liberally construed, we "will not supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. New Mexico*, 113 F.3d 1170, 1174-75 (10th Cir. 1997).  Lacking any

12

> factual allegation of actual, non-speculative harm to a pending or potential legal claim, Walker's complaint cannot survive dismissal and this appeal is frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

*Walker v. Wilkerson*, No. 08-6217, 2009 WL 279866, *1 (10th Cir. Feb. 6, 2009) (unpublished); *see also McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001) (affirming the dismissal of access-to-court claims because the prisoner's conclusory allegations were insufficient where he "did not describe sufficiently the legal materials he was seeking," "did not clarify that . . . resources were inadequate" for his "legitimate queries"); and "did not explain that his legal claim was nonfrivolous"); *Petrick v. Maynard*, 11 F.3d 991, 995 (10th Cir. 1993) (noting that "a prisoner must do more than make a mere conclusory allegation of need for unspecified or unlimited materials"). Here, the Amended Complaint does not allege that Thomas requested access to specific legal resources and does not allege that he gave DACDC officials notice of the legal resources he needed for legitimate queries.  The Amended Complaint specifically states that he did not explain to the DACDC staff the nature of the "other legal issues [he wanted] to litigate."  Doc. 22 at 6.  He does not set forth any facts regarding the reasons his California case was dismissed, and it may have been dismissed for reasons independent of Thomas's ability to access a law library.  For example, his California suit may have been dismissed for want of prosecution because Thomas was engaged in a crime spree in New Mexico and his physical ability to pursue that matter was delayed by his arrest, detention, lack of access to computers, and normal delays associated with incarceration.  *See Lewis*, 518 U.S. at 356.  The Court will not supply additional allegations that could round out Thomas's Amended Complaint, *see Walker*, 2009 WL 279866, *1, and because, as stated *supra*, the record establishes that Thomas has had the access to the courts that our Constitution requires, the Court will not allow another amendment of the Amended Complaint.

The Court has taken judicial notice of Thomas's other filings in this Court.  The records show that Thomas filed a pretrial state habeas petition in November 2007 while at DACDC based on the same allegations that he was being denied access to the courts because the DACDC did not have a law library.  "On November 27, 2007, the state trial court appointed counsel to represent Thomas on the criminal charges.  On March 4, 2008, the state trial court summarily dismissed the habeas petition on the ground that an attorney had been appointed to represent Thomas.  On May 30, 2008, Thomas filed a petition for a writ of certiorari in the state supreme court . . . ."  *Thomas v. Janecka*, No.08cv1016 JCH/WPL, Doc. 17 at 2-3 (D.N.M. April 3, 2009) (Proposed Findings and Recommended Disposition) (citations omitted).  Thomas filed the original and amended civil-rights suit at bar on April 28, 2008, while detained at the DACDC.  By filing these suits while incarcerated at the DACDC, Thomas has clearly demonstrated that he has not been denied access to the courts while incarcerated at the DACDC.

The record in other cases that Thomas has filed in this Court further establishes that Thomas has had significant access to the courts not only in filing his two state and federal habeas petitions from jail and/or prison, but also in filing this civil-rights case; a petition for a writ of mandamus in this Court, *see Thomas v. New Mexico Supreme Court*, No. 08-cv-1178 WJ/DJS (D.N.M. March 16, 2009) Doc. 3 (denying petition); another civil-rights action claiming that his property that was left in the stolen car he was driving at his arrest has not been returned to him, *see Thomas v. Dona Ana County*, No. 09cv0128 WJ/ACT (D.N.M.), Doc. 1; and a complaint for violation of the New Mexico Tort Claims Act against Dona County district attorneys and public defenders, *see Thomas v. Dona Ana County District Attorney*, No. 09cv293 RLP/WPL (D.N.M.), Doc. 1, Ex. 2.

The Court concludes that Thomas's Amended Complaint fails to state a claim and that

14

further amendment of the Amended Complaint would be futile, thus it must be dismissed under §

1915(e)(2)(B)(ii).

**IT IS ORDERED THAT** the Amended Complaint (Doc. 22) is dismissed with prejudice.

**IT IS FURTHER ORDERED** that the June 26, 2009 Order granting Barela's motion for

service on Defendant Anderson is VACATED.

**DATED** this 30th day of June, 2009.

_____
**MARTHA VAZQUEZ**
**CHIEF UNITED STATES DISTRICT JUDGE**

*Attorney for Plaintiff*:

John Paul Thomas, pro se
#68489
H1A 205
6900 W. Miller Dr.
Hobbs, NM 88244

*Attorney for Defendant Chris Barela:*

John W. Caldwell
P.O. Box 1405
Fairacres, NM 88033-1405

*Attorney for Defendant Charles Guffey:*

Charles Guffey, pro se
3858 Caminito Aguilar #D
San Diego, CA 92111

*Attorney for Defendant Kevin Anderson*:

Kevin Anderson, pro se
1850 Copper Loop
Las Cruces, NM 88004